David J. Lisson (SBN 250994)
david.lisson@davispolk.com
Philip T. Sheng (SBN 278422)
philip.sheng@davispolk.com
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER STROSS, an individual, | Case No. 2:21-cv-08360-SVW-E |
| Plaintiff, | **TWITTER'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| TWITTER, INC., a Delaware Corporation; TERRY WILSON SWIMMING POOL & SPA, a business entity of form unknown; and DOES 1 through 10, | |
| Defendants. | Date:       February 28, 2022 |
| | Time:       1:30 p.m. |
| | Courtroom: 10A |
| | Judge:      Hon. Stephen V. Wilson |

PLEASE TAKE NOTICE that on Monday, February 28, 2022, or as soon thereafter as counsel may be heard, Defendant Twitter, Inc. ("Twitter") will move the Court, before the Honorable Stephen V. Wilson, United States District Judge for the Central District of California, at 350 W. 1st Street, Los Angeles, California 90012, to dismiss Plaintiff Alexander Stross' First Amended Complaint against Twitter.  The grounds for this motion are set forth in Twitter's accompanying memorandum of points and authorities, and all pleadings and proceedings herein.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 18, 2022.

1

Dated:  January 25, 2022

Respectfully submitted,
DAVIS POLK & WARDWELL LLP

2

3

4

*/s/ David J. Lisson*

David J. Lisson (SBN 250994)
david.lisson@davispolk.com
Philip T. Sheng (SBN 278422)
philip.sheng@davispolk.com
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

5

6

7

8

9

10

*Attorneys for Defendant Twitter, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.............................................. 1

I.    INTRODUCTION........................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................... 2

      A.    Allegations Concerning Twitter's Platform............................ 3

      B.    Allegations Concerning Plaintiff's Copyrights ..................... 6

III.  LEGAL STANDARD ................................................................................. 8

IV.   ARGUMENT .............................................................................................. 8

      A.    Plaintiff Has Not Alleged Any Volitional Conduct by
            Twitter to Support His Direct Copyright Infringement
            Claim.......................................................................................... 8

      B.    Plaintiff Has Failed to Allege Facts Sufficient to Sustain
            His "Vicarious and/or Contributory" Infringement Claim ................ 14

            1.    Plaintiff's Contributory Infringement Claim
                  Should Be Dismissed................................................. 14

                  a)    Plaintiff Fails to Plead Facts Showing
                        Knowledge of Direct Infringement ................. 15

                  b)    Plaintiff Fails to Adequately Plead that
                        Twitter Could Have Taken "Simple
                        Measures" to Find and Remove Plaintiff's
                        Photographs ........................................................ 17

            2.    Plaintiff's Vicarious Infringement Claim Should
                  Be Dismissed ............................................................ 19

                  a)    Plaintiff Fails to Sufficiently Plead That
                        Twitter Exercised the Requisite Control
                        Over the Direct Infringement ......................... 19

                  b)    Plaintiff Fails to Sufficiently Plead That
                        Twitter Financially Benefited From the
                        Direct Infringement ........................................ 20

      C.    The Deficiencies in Plaintiff's FAC Cannot Be Cured by
            Amendment and It Should be Dismissed with Prejudice .................. 22

V.    CONCLUSION ......................................................................................... 23

# TABLE OF AUTHORITIES

PAGE

## Cases

*10E, LLC v. Travelers Indem. Co. of Connecticut*,
 483 F. Supp. 3d 828 (C.D. Cal. 2020) ..........................................................8, 12

*Allen v. City of Beverly Hills*,
 911 F.2d 367 (9th Cir. 1990)..................................................................................22

*Annabooks, LLC v. Issuu, Inc.*,
 No. 20-cv-04271-CRB, 2020 WL 6873646 (N.D. Cal. Sept. 24, 2020) .............13

*Ascon Props., Inc. v. Mobil Oil Co.*,
 866 F.2d 1149 (9th Cir. 1989)................................................................................22

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).................................................................................8, 12, 18

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
 No. 10-cv-2580-MMM (RZx), 2011 WL 13214300
 (C.D. Cal. Mar. 29, 2011) ...............................................................................16, 17

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).................................................................................................8

*Columbia Pictures Indus., Inc. v. Fung*,
 710 F.3d 1020 (9th Cir. 2013)................................................................................15

*CoStar Grp., Inc. v. LoopNet, Inc.*,
 373 F.3d 544 (4th Cir. 2004)...............................................................................9, 12

*Delphix Corp. v. Actifo, Inc.*,
 No. 13-cv-4613-RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014)...................13

*Elias v. Spotify USA Inc.*,
 No. 20-cv-8530-JFW (ASx), 2020 WL 11884714 (C.D. Cal. Nov. 24, 2020) ...13

*Fox Broad. Co., Inc. v. Dish Network LLC*,
 747 F.3d 1060 (9th Cir. 2014).............................................................................10

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008)..............................................................................16

*Karraa v. City of Los Angeles*,
 No. 2:20-cv-7036-SVW (AGRx), 2020 WL 6882947
 (C.D. Cal. Nov. 9, 2020) ........................................................................................12

*Lehr v. Fed. Nat'l Mortg. Ass'n*,
 No. 2:17-cv-8465-JAK (MRWx), 2018 WL 11253974
 (C.D. Cal. June 20, 2018)........................................................................................17

*Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*,
No. 2:19-cv-07615-SVW (JPR), 2020 WL 5913897
(C.D. Cal. Aug. 27, 2020) ................................................................................ 12

*Long v. Dorset*,
854 F. App'x 861 (9th Cir. 2021) ..................................................................... 9

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .......................................................................... 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ........................................................................................... 15

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
No. 13-cv-3627-JSC, 2014 WL 280391 (N.D. Cal. Jan. 24, 2014) ............... 19

*Parker v. Google, Inc.*,
422 F. Supp. 2d 492 (E.D. Pa. 2006) ............................................................... 21

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ............................................................................ 15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......................................................... 14, 18, 19, 20

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) .......................................................................... 18

*Perfect 10, Inc. v. Giganews*,
847 F.3d 657 (9th Cir. 2017) ...................................................................... passim

*Perfect 10, Inc. v. Giganews, Inc.*,
No. 11-cv-07098-AB (SHx), 2014 WL 8628031
(C.D. Cal. Nov. 14, 2014) ............................................................................ 15, 21

*Perfect 10, Inc. v. Google, Inc.*,
No. 04-cv-9484-AHM (SHx), 2010 WL 9479060
(C.D. Cal. July 30, 2010) .................................................................................. 21

*Poppy Tex & Designs, Inc. v. Cont'l Logistic Serv., Inc.*,
No. 20-cv-3185-MWF (RAOx), 2020 WL 7315343
(C.D. Cal. Oct. 20, 2020) .................................................................................. 13

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................ 14

*Singer by Singer v. Paul Revere Life Ins. Co.*,
No. 14-cv-8700-MMM (MRWx), 2015 WL 13357516
(C.D. Cal. Nov. 18, 2015) ................................................................................. 15

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......................................................................... 22

iii

*Stross v. Meta Platforms, Inc.*,
  Case No. 2:21-cv-8023-MCS-AS (C.D. Cal. Dec. 20, 2021)................................2

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
  No. A-17-CA-365-LY, 2018 WL 1096871 (W.D. Tex. Feb. 28, 2018)..............21

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
  No. 07-cv-5744-AHM (AJWx), 2009 WL 334022 (C.D. Cal. Feb. 2, 2009) .....21

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002)................................................................15

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019)..........................................................passim

*Whiting v. Dep't of the California Highway Patrol*,
  No. 5:18-cv-2652-CAS (JEM),
  2020 WL 5753231 (C.D. Cal. Sept. 1, 2020) ......................................13

*Williams v. Scribd, Inc.*,
  No. 09-cv-1836-LAB (WMc), 2010 WL 10090006
  (S.D. Cal. June 23, 2010) ................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's original Complaint included claims for direct and "vicarious and/or contributory" copyright infringement based on allegations that Twitter provides a website that "allows users to publish posts which include images and videos," that Twitter's users posted copies of Plaintiff's photographs, and that Twitter failed to remove or disable access to alleged infringements.  Dkt. 1 ¶¶ 6, 14, 25.  Although the original Complaint asserted that Plaintiff sent "DMCA takedown notices to Twitter requesting removal of the [allegedly] Infringing Uses from Twitter's website," *id*. ¶ 16, it did not claim that Twitter received the notices or attach Plaintiff's actual correspondence with Twitter.  Twitter moved to dismiss the original Complaint because it failed to plead that Twitter—as opposed to its users—engaged in acts that directly caused the infringement of Plaintiff's copyrights and because the Complaint failed to do anything more than recite the elements of the causes of action for "vicarious and/or contributory" copyright infringement.  Dkt. 18 at 1.

Following Twitter's motion to dismiss, Plaintiff filed his First Amended Complaint ("FAC").  Dkt. 22.  Although the FAC adds more than a dozen pages devoted to incendiary and incorrect claims regarding Twitter's business and platform, it fails to cure the deficiencies in the original Complaint.  Its allegations regarding Twitter's volitional conduct fail to support an inference that Twitter was the direct cause of the alleged infringement of ***Plaintiff's*** identified copyrights. And Plaintiff's claim for "vicarious and/or contributory" infringement must be dismissed because, like the original Complaint, the FAC fails to plead sufficient facts to support an inference that Twitter had knowledge of the specific acts of alleged direct infringement, that Twitter materially contributed to or had the practical ability to stop such infringement, or that Twitter derived a direct financial benefit from it.

Notably, Plaintiff again fails to attach the correspondence referenced in the FAC.  That correspondence shows that Twitter had no knowledge of the alleged copyright infringement and that Plaintiff had no interest in identifying the alleged infringement in a manner that would have enabled Twitter to stop it.  Rather than taking the simple steps that would have put Twitter on notice, Plaintiff chose to manufacture a lawsuit, just as he has against approximately 90 other companies. *See, e.g., Stross v. Meta Platforms, Inc.*, Case No. 2:21-cv-8023-MCS-AS, Dkt. 20 (C.D. Cal. Dec. 20, 2021) (Plaintiff's First Amended Complaint against Meta Platforms, f/k/a Facebook, which contains substantially similar allegations to Plaintiff's FAC here).  Having failed to provide actual notice to Twitter, Plaintiff cannot now complain that Twitter did not stop the alleged infringement or maintain his claims.

Further amendment on any of these points will be futile. Accordingly, the Court should dismiss Plaintiff's FAC with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff filed his original Complaint against Twitter, Terry Wilson Swimming Pool & Spa, Leru Investments, LLC,[1] and ten Doe defendants on October 21, 2021, alleging one claim for copyright infringement against all defendants and one claim for "vicarious and/or contributory copyright infringement" against Twitter.  Dkt. 1.  On December 21, 2022, Twitter moved to dismiss the Complaint on the grounds that Plaintiff failed to allege volitional conduct and failed to adequately plead that Twitter had knowledge of the specific acts of alleged direct infringement, that Twitter had the practical ability to stop such infringement, and that Twitter derived a direct financial benefit from it. Dkt. 18.  In response, Plaintiff filed his FAC on January 11, 2022.  Dkt. 22.

Plaintiff's FAC alleges the following facts, which must be taken as true for the purposes of this motion.

---

[1] Plaintiff dismissed Leru Investments, LLC as a defendant on December 22, 2022. Dkt. 21.

2

### A.   Allegations Concerning Twitter's Platform

"Twitter's Platform is an online microblogging and social networking service.  After registering on that Platform, users can post and interact with (e.g., like, respond to, 'retweet,' etc.) messages known as 'tweets' (which can include text, photographs, multimedia, etc.), communicate with other users and receive notifications on their activities, and more."  FAC ¶ 9.  "Twitter places the content uploaded by users in the places on Twitter's Platform that Twitter determines are optimal to maximize its own advertising revenues through, *inter alia*, user interaction with sponsored (i.e., paid) content."  *Id*. ¶ 10.  Specifically, the FAC describes two categories of allegedly volitional conduct by Twitter.

First, the FAC alleges that Twitter "selects, curates, suggests, recommends, and displays photos for and to users, irrespective of any user command to do so." *Id*. at 4.  It alleges that, "while users on Twitter's Platform may decide what to tweet, Twitter decides what content (including photographs) is suggested, recommended, and/or displayed to users in their respective (and entirely separate and distinct) timelines," and "through Twitter's curation of the 'trends,' 'moments,' searches, and advertisements on Twitter's Platform, [Twitter] displays photographs to non-posting users that would otherwise only be seen on the posting user(s)'s profile page(s)."  *Id*. ¶ 14.  "Twitter performs [these] actions . . . through its team of employees in conjunction with processes and software that Twitter designed, engineered, and/or programmed to do the same."  *Id*. ¶ 15.  That is, the actions are performed "algorithmically" and through "automated processes designed and controlled by human employees."  *Id*. ¶¶ 26, 66.

A user's "timeline displays tweets from accounts and 'topics' that a user 'follows,' [and] displays 'suggested content' and 'recommended Tweets,' including photographs, from Twitter based on what Twitter decides will be most engaging for that user."  *Id*. ¶ 16.  "Twitter predicts" what users care most about and makes "suggestions and recommendations."  *Id*. ¶¶ 17, 22; *see id.* ¶¶ 17–22.

Plaintiff does not allege that any human is making decisions involved in the timeline processes it describes.

Twitter's "trends" feature displays "the hottest emerging topics of discussion." *Id*. ¶ 23. "Twitter ranks and determines the trends, and tailors those trends based on users' interests, locations, and who they follow." *Id*. The FAC quotes from Twitter's FAQ page to allege that "Twitter manually monitors and adds 'personalized' context to trends" and "selects and applies categories to the trends 'based on what the Tweets in the Trend are about.'" *Id*. ¶ 24. However, the FAQ page makes clear that "[t]rends are determined by an algorithm" and are "automatically selected." *Twitter Trends FAQ*, Twitter Help Center, https://help. twitter.com/en/using-twitter/twitter-trending-faqs.

Twitter's "moments" feature refers to "stories about what's happening around the world." FAC ¶ 25. Plaintiff quotes from one of Twitter's Help pages to allege that "Twitter creates some moments (e.g., sporting events or TV shows) algorithmically 'to reflect the unfolding conversation while the event is happening,' while Twitter prepares and creates other moments manually by its 'Curation team.'" *Id*. As the same Help page explains, Twitter's "moments" feature is intended to cover "what's happening in the world," including "the best things happening on Twitter across news, sports, entertainment, and fun." *Twitter Moments guidelines and principles*, Twitter Help Center, https://help.twitter.com/ en/rules-and-policies/twitter-moments-guidelines-and-principles. Examples include Tweets "at the center of a protest, the front row at the Oscars, on the field at the World Cup, or from outer space." *Id*.

The "search" function on Twitter's platform allows users to search for content. FAC ¶ 29. The FAC quotes from one of Twitter's FAQ pages to allege that "Twitter filters search results into categories it labels 'Top,' 'Latest,' 'Accounts/People,' 'Photos,' or 'Videos.'" *Id*. The FAC further alleges that "Twitter compiles [Top tweets] based on what it predicts the user is 'likely to care

---

4

about first,' [and] Twitter makes those determinations based on, *inter alia*, the popularity of a tweet  . . . , not the chronological order in which the tweet was published." *Id*. ¶ 30.  "Twitter compiles the stream of tweets in the 'Photos' category 'much in the same way as top Tweets.'" *Id.* ¶ 31.  Plaintiff does not allege that any human is making decisions involved in the search processes it describes, and the FAQ page from which the FAC quotes states:  "Top Tweets are selected through an algorithm, we do not manually curate search results." *Search result FAQs*, Twitter Help Center, https://help.twitter.com/en/using-twitter/top-search-results-faqs.

Finally, the FAC discusses Twitter's placement of advertisements on its platform.  "Twitter displays paid content, 'such as promoted Tweets or Retweets' including photographs, on users' timelines." FAC ¶ 32.  The FAC alleges that "Twitter promotes paid-for content to certain users" and "targets those users" based on various user information.  *Id*. ¶ 33.  The FAC goes on to describe the "different types of Twitter Ads."  *Id*. ¶ 34; *see id.* ¶¶ 34–38.  Plaintiff does not allege that any human is making decisions involved in the advertisement selection processes it describes.

The FAC does not contain any allegations that any of Plaintiff's photographs were ever selected for inclusion in Twitter's timeline, trends, moments, search, or advertising features.  *See id*. ¶¶ 14–38.  To the contrary, the "representative examples of the Infringing Uses . . . set forth in Exhibit 1," *id*. ¶ 52, consist entirely of user's posts residing on a user's personal profile, which Plaintiff admits is "the page that users curate themselves."  *Id.* ¶ 16, FAC, Ex. 1.  The only allegation regarding Plaintiff's photos is an unsupported allegation "upon information and belief" that Twitter "selects, curates, suggests and recommends photographs (including the Infringing Uses) for and to users, irrespective of any user command to display, distribute or otherwise use those photographs on Twitter's platform." *Id*. ¶ 13.

The second category of alleged volitional conduct by Twitter in the FAC involves the storing, caching, and distributing copies of photographs on Twitter's servers and platform. *Id.* ¶¶ 39–43. Specifically, the FAC claims that "Twitter's Platform is one of the biggest photograph-sharing platforms on the Internet" and "[t]o take advantage of that volume, Twitter uses 'Blobstore,' its scalable storage system built to store and deliver photographs." *Id.* ¶ 39. Photographs are allegedly stored in certain "front-end servers" and "storage nodes," and Twitter's "Metadata store" records information required to retrieve photographs. *Id.* ¶¶ 40–41. "Twitter's asynchronous queue server, 'Kestrel,' then replicates (i.e., creates copies of) the photograph to all of those data centers and assigns each a unique identifier." *Id.* ¶ 42. "Twitter maintains its own caches . . . and 'points of presence' . . . so that photographs can be served from Twitter's Blobstore to Twitter's Platform entirely by Twitter." *Id.*

## B. Allegations Concerning Plaintiff's Copyrights

The FAC alleges that Plaintiff is a professional photographer and owner of copyright in, *inter alia*, 41 photographs registered with the U.S. Copyright Office (the "Subject Works"). *Id.* ¶ 51. Plaintiff claims that "Twitter (as well as users on Twitter's Platform) copied, reproduced, published, created derivative works of, distributed, transmitted, stored, modified, manipulated, and/or otherwise used the Subject Works without license, authorization, or consent from [Plaintiff] on Twitter's Platform and servers (collectively, the 'Infringing Uses')." *Id.* ¶ 52. However, as with his original Complaint, the "representative examples of the Infringing Uses . . . set forth in Exhibit 1," *id.*, consist entirely of user's posts residing on a "user's personal profile (i.e., ***the page that users curate themselves***)," *id.* ¶ 16 (emphasis added); FAC, Ex. 1.

The FAC acknowledges that users agree "not to do or share anything on Twitter's Platform that infringes or violates someone else's . . . intellectual property rights." FAC ¶ 44. "If a copyright holder believes that content on

Twitter's Platform infringes their copyright(s) in their protected work(s), the copyright holder can, *inter alia*, contact Twitter's designated agent under the Digital Millennium Copyright Act ('DMCA')." *Id.* at ¶ 45. The copyright holder must provide certain information to Twitter for there to be "an effective Takedown Notice under the DMCA, 17 U.S.C. § 512," including "identification of the copyrighted work allegedly infringed," "identification of the allegedly infringing content," and "information for Twitter to locate the allegedly infringing content on its Platform (e.g., a web address ('URL') for the allegedly infringing content)." *Id.*

The FAC alleges that Plaintiff submitted two Takedown Notices to Twitter and that his counsel sent a third. *Id.* ¶¶ 53–56. However, like the original Complaint, the FAC does not attach Plaintiff's actual correspondence with Twitter. That correspondence reveals that Plaintiff purported to identify the original works and allegedly infringing material in email attachments and that his counsel sent its entire correspondence as an email attachment. Exs. 1–3 to Declaration of Vanessa Szajnberg ("Szajnberg Decl."). The correspondence informed Plaintiff that "[e]mail attachments are not accepted for security reasons, and are removed by our support system." *Id.* Twitter provided instructions on how to submit a DMCA takedown notice "through [Twitter's] copyright complaint form" in addition to a clickable URL to the form. *Id.* The FAC does not allege that Plaintiff submitted a notice in a format that Twitter could receive or that Twitter had knowledge of the specific acts of alleged infringement through some other means.

After Plaintiff served his original Complaint, Twitter was able to identify the allegedly infringing material and remove it from the platform. FAC ¶ 59.[2]

---

[2] The FAC alleges that "all but two of the Infringing Uses" were removed from Twitter's platform. FAC ¶ 59. Twitter has taken down all of the posts identified in Plaintiff's original Complaint and the FAC. If Plaintiff provides the information necessary for Twitter to identify any further allegedly infringing material in a manner that Twitter can receive it, Twitter will remove such material.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The general rule that a court must accept as true all of the factual allegations in a complaint does not apply to "'naked assertions' devoid of 'further factual enhancement,'" "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or "legal conclusion[s] couched as . . . factual allegation[s]." *Id.* (quoting *Twombly*, 550 U.S. at 555–57).  A complaint that relies on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss.  *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also 10E, LLC v. Travelers Indem. Co. of Connecticut*, 483 F. Supp. 3d 828, 837 (C.D. Cal. 2020).

## IV.   ARGUMENT

### A.   Plaintiff Has Not Alleged Any Volitional Conduct by Twitter to Support His Direct Copyright Infringement Claim

To prove direct copyright infringement by Twitter, Plaintiff must show that Twitter violated at least one of the exclusive rights listed in 17 U.S.C. § 106.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019).  Plaintiff "must also establish causation, which is commonly referred to as the 'volitional-conduct requirement.'"  *Id.* (citing *Perfect 10, Inc. v. Giganews*, 847 F.3d 657, 666 (9th Cir. 2017) ).  As the Ninth Circuit has explained, the word "volition" in this context "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts."  *Id.* (quoting *Giganews*, 847 F.3d at 666).  That is, "***direct*** liability must be premised

on conduct that can reasonably be described as the ***direct cause*** of the infringement." *Id.* (emphasis in original) (quoting *Giganews*, 847 F.3d at 666).

The volitional-conduct requirement "takes on greater importance in cases involving automated systems." *Id.* To allege volitional conduct by Twitter, Plaintiff must allege facts showing that Twitter "exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos." *Id.* at 732 (cleaned up) (quoting *Giganews*, 847 F.3d at 666, 670). Plaintiff must allege that Twitter was "***actively involved*** in the [alleged] infringement," rather than simply a passive participant. *Id.* (emphasis in original); *see also Long v. Dorset*, 854 F. App'x 861, 863–64 (9th Cir. 2021) (affirming dismissal of complaint where no volitional conduct was alleged). "[A]utomatic copying, storage, and transmission of copyrighted materials, when instigated by others," does not suffice. *Zillow*, 918 F.3d at 732 (quoting *Giganews*, 847 F.3d at 670). Plaintiff must sufficiently allege that Twitter engaged in "actual infringing conduct ***with a nexus sufficiently close and causal to the illegal copying*** that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner." *Id.* (emphasis added) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)).

The Ninth Circuit's decision in *Zillow* is controlling and illustrates the critical "'distinction between active and passive participation' in the alleged infringement." *Id.* (quoting *Giganews*, 847 F.3d at 667). As with Twitter's services, Zillow did not "select" the listing photos its users posted. As the court observed, Zillow's "feed providers themselves select and upload every photo . . . that wind[s] up on the Listing Platform," and "users, not Zillow, selected images to add to their personal boards and instigated the automatic caching process by saving a particular image." *Id.* at 733, 737 (cleaned up). Based on these facts, the Ninth Circuit held that Zillow did not "exercise control" over the listing photos beyond

the "general operation of its website," even though Zillow engineers "programmed" and "designed" the system. *Id*. at 733 (cleaned up). Zillow's "behind-the-scenes technical work" including "produc[ing] cached copies of [plaintiff's] images" and "automatically trim[ming] or pad[ding] images . . . [did] not amount to volitional conduct." *Id*. at 738. The court emphasized that there is no direct liability where an online system "responds automatically to user's input without intervening conduct by the website owner." *Id.* (cleaned up). Accordingly, Zillow's "automated processes storing or caching [plaintiff's] photos [were] insufficiently volitional to establish that Zillow directly infringed." *Id*. at 737; *see also Fox Broad. Co., Inc. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014) ("[O]perating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused copies to be made."); *Williams v. Scribd, Inc.*, No. 09-cv-1836-LAB (WMc), 2010 WL 10090006, at *6 (S.D. Cal. June 23, 2010) (a "social publishing" website that allows users to upload content does not act volitionally when its users upload infringing work onto the platform). "Nor [could] Zillow's promotion of [its website], including encouraging users to share photos through its site, be seen as instigating user copying." *Zillow*, 918 F.3d at 738 (cleaned up).

Plaintiff's FAC alleges that users can "register[] on [Twitter's] Platform" and "post and interact with (e.g., like, respond to, 'retweet,' etc.) messages known as 'tweets' (which can include text, photographs, multimedia, etc.), communicate with other users and receive notifications on their activities, and more." FAC ¶ 9. This is all user conduct that is not attributable to Twitter. *See Zillow*, 918 F.3d at 737–38.

The FAC further alleges—based on information and belief—that "Twitter (1) selects, curates, suggests, and recommends photographs (including the Infringing Uses) for and to users, irrespective of any user command to display, distribute, or otherwise use those photographs on Twitter's Platform; and (2)

1   stores, caches, and distributes multiple copies of photographs on its servers and

2   Platform, irrespective and independent of any user direction or requirements."

3   FAC ¶ 13.  However, the facts pled in support of those allegations are insufficient

4   to support Plaintiff's direct infringement claim.

5           First, the FAC describes Twitter's timeline, trends, moments, searches, and

6   advertisements features.  *Id*. ¶¶ 14–38.  However, these allegations do not

7   demonstrate volitional conduct because the FAC alleges that the actions it

8   describes are performed through "automated processes designed and controlled by

9   human employees."  *Id*. ¶¶ 15, 66.  In *Zillow*, the Ninth Circuit drew a "volitional-

10  conduct line."  *Zillow*, 918 F.3d at 738.  On one side of the line are "cases

11  involving Internet service providers" that utilize "automated processes [for] storing

12  or caching . . . photos" and for "promotion of [content], including encouraging

13  users to share photos through its site."  *Id*. at 737–38.  "[Such] conduct with

14  respect to these photos amounts to, at most, passive participation in the alleged

15  infringement . . . and is not sufficient to cross the volitional-conduct line."  *Id*. at

16  738.  An Internet service provider can cross that line, however, when human

17  employees begin selecting and tagging images and making editorial, qualitative

18  decisions to display a plaintiff's images instead of other images.  For example,

19  Zillow crossed the line by having its employees select and tag 3,921 of plaintiff's

20  images for public display on a home-improvement blog featuring "photos of

21  artfully-designed rooms."  *Id.* at 730, 736.

22          Plaintiff does not allege any such human involvement in the selection of

23  photographs here.  At most, Plaintiff alleges that Twitter engineers programmed

24  and designed the Twitter system, *id*. ¶¶ 15, 66, but that is insufficient.  *See Zillow*,

25  918 F.3d at 733 (rejecting plaintiff's argument that "Zillow designed its system to

26  cause the reproduction, display, and adaptation of [plaintiff's] photographs"

27  (cleaned up)).[3]

28

---

[3] The only other human involvement referenced in the FAC is the manual
monitoring of trends and the creation of certain moments by Twitter's alleged

Moreover, the allegations fail for the independent reason that Plaintiff has failed to allege any "nexus" between Twitter's allegedly volitional conduct that is "sufficiently close and causal ***to the illegal copying***." *Id.* at 732 (emphasis added) (quoting *CoStar*, 373 F.3d at 550). Plaintiff dedicates numerous paragraphs to describing Twitter's timeline, trends, moments, searches, and advertisements features, yet does not allege that any of his photographs were ever selected for display or inclusion in any of those features. FAC §§ A.1–5. To the contrary, the "representative examples of the Infringing Uses . . . set forth in Exhibit 1," *id.* ¶ 52, consist entirely of user's posts residing on a user's personal profile, which Plaintiff admits is "the page that users curate themselves." FAC, Ex. 1; FAC ¶ 16. Thus, even if the described algorithms and automated processes were sufficient to demonstrate volitional conduct (which they are not), the FAC is still insufficient because it fails to plead that they resulted in the copying of Plaintiff's photographs.

The FAC alleges "upon information and belief" that Twitter "selects, curates, suggests, and recommends photographs (including the Infringing Uses)." FAC ¶ 13; *see also id.* ¶ 66.a. However, such a conclusory allegation is precisely the type of "'naked assertion[]' devoid of 'further factual enhancement'" that courts routinely hold should be given no weight. *Iqbal*, 556 U.S. at 678; *10E, LLC*, 483 F. Supp. 3d at 837; *Karraa v. City of Los Angeles*, No. 2:20-cv-7036-SVW (AGRx), 2020 WL 6882947, at *5 (C.D. Cal. Nov. 9, 2020); *Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, No. 2:19-cv-07615-SVW (JPR), 2020 WL 5913897, at *3 (C.D. Cal. Aug. 27, 2020), *aff'd,* No. 20-55998, 2021 WL 5405488 (9th Cir. Nov. 18, 2021).

"Curation team" that finds and highlights "great Tweets". FAC ¶¶ 24, 26, 27. There is no allegation that humans select photos for inclusion in the trends or moments generally or that Plaintiff's photographs specifically were ever selected by a human. *Id.* To the contrary, the documents quoted in the FAC confirm that that "[t]rends are determined by an algorithm" and are "automatically selected." *Twitter Trends FAQ*, Twitter Help Center, https://help.twitter.com/en/using-twitter/twitter-trending-faqs

12

Furthermore:

> Where, as here, some of the allegations are qualified with the phrase ["on information and belief"] and others are not, a reasonable inference arises that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations. It thus creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree.

*Elias v. Spotify USA Inc.*, No. 20-cv-8530-JFW (ASx), 2020 WL 11884714, at *3 (C.D. Cal. Nov. 24, 2020) (alteration in original) (quoting *Delphix Corp. v. Actifo, Inc.*, No. 13-cv-4613-RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014)). Accordingly, such allegations must be "accompanied by a statement of facts upon which the belief is founded." *Poppy Tex & Designs, Inc. v. Cont'l Logistic Serv., Inc.*, No. 20-cv-3185-MWF (RAOx), 2020 WL 7315343, at *4 (C.D. Cal. Oct. 20, 2020); *see also Whiting v. Dep't of the California Highway Patrol*, No. 5:18-cv-2652-CAS (JEM), 2020 WL 5753231, at *10 n.4 (C.D. Cal. Sept. 1, 2020). The FAC includes no such facts and instead provides "representative examples" of the Infringing Uses consisting entirely of user's posts residing on a user's personal profile. *Id*. ¶ 52; FAC, Ex. 1.

Finally, Plaintiff alleges that Twitter "stores, caches, and distributes multiple copies of photographs on its servers and Platform" and that "Twitter's Platform, and the content thereon, is actively managed and updated by Twitter itself, including the data stored on Twitter's servers (which necessarily includes the Infringing Uses)." FAC at 9; *id.* ¶¶ 39–43, 61. However, providing a purported description of how photographs are handled by Twitter's automated platform and alleging that Plaintiff's copyrights are "necessarily included" in the billions of other photographs on that Platform is plainly insufficient to plead volitional conduct. *See Annabooks, LLC v. Issuu, Inc*., No. 20-cv-04271-CRB, 2020 WL 6873646, at *4 (N.D. Cal. Sept. 24, 2020) (granting motion to dismiss direct infringement claim because "[w]hile Annabooks alleges generally that Issuu 'transmit[s] copies of [infringing] works from its servers to the computers of its

users,' Annabooks makes no allegations regarding the transmission of this Work *specifically*" (emphasis in original)).  Nor are Plaintiff's allegations that Twitter "stores, caches, and distributes multiple copies of photographs on its servers and Platform" sufficient.  FAC at 9; *id.* ¶¶ 39–43.  The Ninth Circuit has squarely foreclosed this argument.  *Zillow*, 918 F.3d at 738 ("Zillow produced cached copies of [plaintiff's] images . . . This activity does not amount to volitional conduct."); *Giganews*, 847 F.3d at 670 (quoting *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995)) (the "act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it" is not volitional).

Because the FAC fails to allege facts sufficient to establish volitional conduct by Twitter, its claim for direct copyright infringement should be dismissed.

### B.   Plaintiff Has Failed to Allege Facts Sufficient to Sustain His "Vicarious and/or Contributory" Infringement Claim

Plaintiff's second claim for relief against Twitter is for "Vicarious and/or Contributory Copyright Infringement."  FAC ¶¶ 70–80.  Vicarious and contributory copyright infringement are separate doctrines with distinct elements that a complaint must sufficiently allege to survive a motion to dismiss. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171, 1173 (9th Cir. 2007).

### 1.   Plaintiff's Contributory Infringement Claim Should Be Dismissed

To establish contributory infringement, a plaintiff must show that the defendant "(1) knew of the direct infringement; and (2) they either induced, caused, or materially contributed to the infringing conduct."[4]  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).

---

[4] Plaintiff must necessarily proceed under a material contribution theory and not an inducement theory.  Inducement arises only where a defendant "intended and encouraged" infringement.  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020,

### a) Plaintiff Fails to Plead Facts Showing Knowledge of Direct Infringement

Knowledge of direct infringement "requires more than a generalized knowledge by the [defendant] of the possibility of infringement." *Id.* Plaintiff must allege that Twitter had "actual knowledge of specific acts of infringement." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-07098-AB (SHx), 2014 WL 8628031, at *7 (C.D. Cal. Nov. 14, 2014), *aff'd,* 847 F.3d 657 (9th Cir. 2017) (quoting *Napster*, 239 F.3d at 1021). The FAC alleges that through three takedown notices sent to Twitter in "March, April, and September 2021, Twitter had actual knowledge, and/or was aware of the facts or circumstances, of the Infringing Uses." FAC ¶ 73. However, this allegation is belied by the very correspondence to which the FAC refers.

This Court is permitted to consider the parties' correspondence because it is referenced in the FAC and forms a basis of Plaintiff's claims. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Under the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment."); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *Singer by Singer v. Paul Revere Life Ins. Co.*, No. 14-cv-8700-MMM (MRWx), 2015 WL 13357516, at *2 (C.D. Cal. Nov. 18, 2015) (considering letters from defendants to plaintiff because they were essential to plaintiff's claims). Moreover, the "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by

1037 (9th Cir. 2013) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 n.13 (2005)). The FAC does not allege that Twitter intended or encouraged any infringement of Plaintiff's copyrights.

15

exhibit." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  In fact, "[w]hen documents incorporated in the complaint or subject to judicial notice contradict the allegations of the complaint, the exhibits govern." *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, No. 10-cv-2580-MMM (RZx), 2011 WL 13214300, at *13 n.81 (C.D. Cal. Mar. 29, 2011).

Here, the correspondence shows that Twitter did not receive the information necessary to put it on notice of the alleged infringement.  Specifically, Plaintiff alleges that he sent his first alleged notice in March 2021, but the correspondence states that Plaintiff purported to identify the "Infringing material" in an email attachment.  Ex. 1 to Szajnberg Decl.  Twitter responded by informing Plaintiff that "Email attachments are not accepted for security reasons, and are removed by our support system."  *Id*.  Twitter also provided Plaintiff instructions on how to submit his DMCA takedown notice "through [Twitter's] copyright complaint form" and provided a clickable URL to the form.  *Id*.  Plaintiff does not allege that he submitted the information this way, and he did not.  Instead, Plaintiff sent another takedown notice in April 2021 as another email attachment.  Ex. 2 to Szajnberg Decl.  Twitter again informed Plaintiff that due to security reasons his email attachments were not received and provided Plaintiff instructions on how to submit his DMCA takedown notice.  *Id*.  Plaintiff again did not do so.

In September 2021, Plaintiff's counsel purportedly sent a takedown notice to Twitter, but again the letter was sent as an email attachment.  Ex. 3 to Szajnberg Decl.  The FAC describes this takedown notice as including screen captures and lists of URLs in clickable form and expresses surprise that Twitter did not remove the allegedly infringing photographs.  *Id*. ¶ 55.  But the correspondence shows that Twitter informed Plaintiff's counsel that it could not receive email attachments for security reasons, as Twitter had communicated to Plaintiff himself.  Exs. 1–2 to Szajnberg Decl.  Instead of following the instructions to submit Plaintiff's

takedown notice or otherwise provide actual notice to Twitter, Plaintiff and its counsel filed this lawsuit.[5]

That the FAC refers to but does not attach the correspondence above is telling.  Plaintiff and his counsel knew well that Twitter had not received the information necessary to put it on notice of any alleged infringement.  But instead of complying with a simple request to provide the information in a manner that did not present a security risk, Plaintiff and his counsel chose to keep silent so that they could file a lawsuit.  Such manufacturing of a dispute should not be condoned, and Plaintiff's contributory copyright infringement claim should be dismissed because the documents relied on in the FAC, but not attached to it, show that Twitter did not obtain knowledge of the specific instances of alleged direct infringement.  *See Lehr v. Fed. Nat'l Mortg. Ass'n*, No. 2:17-cv-8465-JAK (MRWx), 2018 WL 11253974, at *5 (C.D. Cal. June 20, 2018) (granting motion to dismiss where allegations supporting claims were conclusory and contradicted by documents attached to the complaint); *Pineda v. Mortg. Elec. Registration Sys., Inc.*, No. 5:13-cv-2089-JLS (DTBx), 2014 WL 346997, at *2 (C.D. Cal. Jan. 29, 2014) (dismissing claims with prejudice where "the recorded documents contradict Plaintiffs' allegations in their Complaint, and Plaintiffs are unable to offer any evidence that the recorded documents are not accurate"); *Babadjanian*, 2011 WL 13214300, at *13 n.81.

   **b)**  **Plaintiff Fails to Adequately Plead that Twitter Could Have Taken "Simple Measures" to Find and Remove Plaintiff's Photographs**

Plaintiff's contributory infringement claim fails for the additional reason that the FAC fails to adequately allege material contribution from Twitter to the alleged

---

[5] Plaintiff's allegation that "Twitter never replied" further to his counsel's letter is demonstrably false.  FAC ¶ 58 (cleaned up).  Twitter sent a further email to Plaintiff's counsel on October 8, 2021, again stating that the attachment had not been received and requesting that Plaintiff submit his complaint in the body of an email, through Twitter's online DMCA form, or using a link Twitter provided to upload it directly.  Ex. 4 to Szajnberg Decl.  Plaintiff and his counsel did not identify the allegedly infringing material using any of these mechanisms.

direct infringement by third parties.  *See Luvdarts*, 710 F.3d at 1072.  In the Internet context, a plaintiff must allege that a defendant "can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works."  *Amazon.com*, 508 F.3d at 1172 (citation omitted).  Only simple measures are required of a service provider because Congress has "place[d] the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).

Here, the FAC alleges in the most conclusory terms that "Twitter has the tools, resources, staff, technological capabilities, and knowledge of/about photographs on its Platform and servers (including the Infringing Uses) to expeditiously locate and remove the Infringing Uses, and thereby prevent further infringement of [Plaintiff's] copyrights in the Subject Works.  Indeed, doing so requires only simple measures from Twitter."  FAC ¶ 74.  But the FAC does not plead any facts in support of this assertion and thus, it should not be given any weight.  *See Iqbal*, 556 U.S. at 678.  It is also facially not credible.  Twitter never received notice of Plaintiff's original works or the allegedly infringing content.  *Supra* Section IV.B.1.a.  The FAC provides no explanation of what "simple measures" Twitter could have taken without such notice, and employing tools, resources, staff, and technologies to identify, locate, and remove unidentified copies of Plaintiff's photographs among billions of other photographs on "one of the biggest photograph-sharing platforms on the Internet," FAC ¶ 39, goes well beyond what the law requires.

Accordingly, Plaintiff has not properly alleged that Twitter in any way materially contributed to the alleged infringements, and his claim for contributory infringement should be dismissed.  *See Giganews*, 847 F.3d at 671 (plaintiff's submission of generalized takedown demands for its photographs did not provide defendant "simple measures" for removing the images because plaintiff's notices

did not include machine-readable information for the photographs); *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 13-cv-3627-JSC, 2014 WL 280391, at *7 (N.D. Cal. Jan. 24, 2014) (granting motion to dismiss claim for contributory infringement where "Plaintiff fail[ed] to allege what 'simple measures' Defendant failed to take to prevent further damage to the copyrighted photographs").

## 2. Plaintiff's Vicarious Infringement Claim Should Be Dismissed

"[T]o succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Amazon.com*, 508 F.3d at 1173.  Plaintiff fails to allege sufficient facts to support either control or direct financial benefit beyond simply reciting those elements.

### a) Plaintiff Fails to Sufficiently Plead That Twitter Exercised the Requisite Control Over the Direct Infringement

Control over another's direct infringement requires that a defendant "has both a legal right to stop or limit the directly infringing conduct, as well as the *practical ability* to do so." *Id.* (emphasis added).  Similar to Plaintiff's failure to allege that Twitter can take "simple measures" to prevent further direct infringement, Plaintiff fails to plead sufficient facts to support an allegation that Twitter had the practical ability to stop or limit the infringement.

The FAC alleges that "Twitter has the tools, resources, staff, technological capabilities, and knowledge of/about photographs on its Platform and servers (including the Infringing Uses) to expeditiously locate and remove the Infringing Uses, and thereby prevent further infringement of Stross' copyrights in the Subject Works"; that "Twitter has the right and ability to supervise its Platform and the content posted thereon, including removing copyright-infringing content"; and that "Twitter also has the right and ability to oversee the uses of the Infringing Uses on its Platform."  FAC ¶¶ 71, 74.  However, these conclusory allegations do not

1  establish that Twitter had the practical ability to identify and stop the specific
2  alleged direct infringement about which Plaintiff now complains but did not
3  identify to Twitter.

4         The Ninth Circuit's decision in *Zillow* is again controlling.  In *Zillow*, the
5  court held that "the vicarious liability theory [does not] fit the Zillow platform"
6  because "Zillow lacked the practical ability to police its users' infringing conduct."
7  *Zillow*, 918 F.3d at 746 (cleaned up).  Specifically, "there was insufficient
8  evidence that Zillow had the technical ability to screen out or identify infringing
9  [plaintiff] photos ***among the many photos that users saved or uploaded daily***."  *Id.*
10 (emphasis added).  The Ninth Circuit's decision in *Amazon.com*, is also instructive.
11 There, the court found that Google lacked the practical ability to police infringing
12 activity because doing so would require it to "analyze every image on the
13 [I]nternet, compare each image to all the other copyrighted images that exist in the
14 world . . . and determine whether a certain image on the web infringes someone's
15 copyright."  *Amazon.com*, 508 F.3d at 1174 (alteration in original).  Plaintiff's
16 threadbare allegations that Twitter had the ability to oversee its users' conduct
17 generally is insufficient to establish a practical ability to stop the alleged direct
18 infringement of Plaintiff's copyrights specifically.  Accordingly, Plaintiff's
19 vicarious liability claim should be dismissed.

20        **b)**    **Plaintiff Fails to Sufficiently Plead That Twitter**
             **Financially Benefited From the Direct Infringement**
21

22        Plaintiff's vicarious infringement claim fails for the additional reason that
23 Plaintiff does not adequately allege that Twitter financially benefited from the
24 direct infringement of Plaintiff's copyrights.  To satisfy this requirement, Plaintiff
25 must allege facts establishing a causal relationship between a financial benefit and
26 the "infringement of the plaintiff's copyrighted material, rather than general
27 infringement."  *Giganews*, 847 F.3d at 673.  Notwithstanding the hyperbolic
28 allegations in the FAC about Twitter and its business, "[t]his action is a specific

lawsuit by a specific plaintiff against a specific defendant about specific copyrighted images; it is not a lawsuit against copyright infringement in general on [defendant's platform]." *Giganews*, 847 F.3d at 673 (quoting *Giganews, Inc*., 2014 WL 8628031, at *4).  Thus, Plaintiff must show that "customers were drawn to [defendant's] services because of the infringing . . . material *at issue*."  *Id*. at 674 (emphasis added).  The financial benefit must be direct, such as fees paid by customers or advertisers, rather than an increase in the value for investors caused by a greater number of users or advertisers.  *UMG Recordings, Inc. v. Veoh Networks Inc.*, No. 07-cv-5744-AHM (AJWx), 2009 WL 334022, at *6 (C.D. Cal. Feb. 2, 2009).

Here, the FAC alleges that Twitter generally benefits financially from "plac[ing] the content uploaded by users in the places on Twitter's Platform that Twitter determines are optimal to maximize its own advertising revenues through, *inter alia*, user interaction with sponsored (i.e., paid) content."  FAC ¶ 10.  That is insufficient because it is unconnected to Plaintiff's photos.  The FAC further alleges, upon information and belief, that Twitter "[f]inancially benefits from the Infringing Uses by, *inter alia*, displaying and distributing those Uses in conjunction with advertisements, offers, and other sponsored content."  *Id.* ¶ 66.c.  However, Plaintiff fails to plead any facts to support these conclusory allegations based on information and belief, nor could he.  Plaintiff has not alleged, and cannot plausibly allege, that Twitter has added to its user base, received increased revenues, or indeed received any benefit (much less a direct financial one) because of its users' alleged infringements of ***Plaintiff's*** photos and videos.  Plaintiff's threadbare allegations are therefore insufficient as a matter of law.  *Perfect 10, Inc. v. Google, Inc.*, No. 04-cv-9484-AHM (SHx), 2010 WL 9479060, at *9 (C.D. Cal. July 30, 2010); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2018 WL 1096871, at *10 (W.D. Tex. Feb. 28, 2018).

### C. The Deficiencies in Plaintiff's FAC Cannot Be Cured by Amendment and It Should be Dismissed with Prejudice

Plaintiff's FAC should be dismissed with prejudice. The Ninth Circuit has made clear that a court should not grant leave to amend if doing so would be an "exercise in futility" or "where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Denying leave to amend is particularly appropriate where, as here, Plaintiff has already amended his claims and can provide no satisfactory explanation for his failure to fully develop his contentions originally. *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

Plaintiff's direct infringement claim cannot be saved by amendment because the alleged volitional conduct is performed algorithmically and automatically without human input. Furthermore, there is no nexus between the alleged volitional conduct and Plaintiff's photographs. Plaintiff cannot allege truthfully that any of his photographs were ever selected by a human for display or inclusion in any timeline, trends, moments, searches, or advertisements on Twitter's platform. To the contrary, Exhibit 1 to Plaintiff's original Complaint and Exhibit 1 to Plaintiff's FAC, both of which Plaintiff asserted contain "representative examples of the Infringing Uses," consist entirely of user's posts residing on a "user's personal profile . . . that users curate themselves." *Id.* ¶ 16; Dkt. 18, Ex. 1; FAC, Ex. 1.

Plaintiff's contributory and vicarious infringement claims cannot be saved by amendment either. Plaintiff cannot show that Twitter had knowledge of the specific acts of direct infringement because Plaintiff purposefully kept that knowledge from Twitter. Without showing actual notice, Plaintiff cannot show

Twitter could have taken simple measures to find and remove Plaintiff's photographs or that Twitter had the practical ability to stop or limit the direct infringement.  Finally, Plaintiff has twice failed to allege that Twitter somehow directly benefited financially from the direct infringement of Plaintiff's photographs and it cannot do so.

Accordingly, all of Plaintiff's claims should be dismissed with prejudice.

## V.      CONCLUSION

For the foregoing reasons, the Court should grant this Motion and dismiss Plaintiff's FAC against Twitter with prejudice.

Dated: January 25, 2022

Respectfully submitted,
DAVIS POLK & WARDWELL LLP

*/s/ David J. Lisson*

David J. Lisson (SBN 250994)
david.lisson@davispolk.com
Philip T. Sheng (SBN 278422)
philip.sheng@davispolk.com
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

*Attorneys for Defendant Twitter, Inc.*