UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-8360-SVW | Date | February 28, 2022 |
|---|---|---|---|
| Title | *Alexander Stross v. Twitter, Inc. et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING IN PART MOTION TO DISMISS [24]

## I. INTRODUCTION

Before the Court is Defendant Twitter, Inc.'s ("Twitter") motion to dismiss Plaintiff Alexander Stross' First Amended Complaint. *See* First Am. Compl., ECF No. 24 ("FAC"). Plaintiff is a professional photographer who owns copyrights to a number of his photographs. *See* FAC ¶ 51, ECF No. 22. Plaintiff alleges that various users on Twitter, and Twitter itself, copied, reproduced, and republished his photographs without being permitted to do so. *Id.* ¶ 52. Thus, Plaintiff alleges one claim for copyright infringement against Twitter and Defendant Terry Wilson Swimming Pool & Spa and one claim for "vicarious and/or contributory" copyright infringement against Twitter. *Id.* ¶¶ 63–80.[1]

For the below reasons, Twitter's motion to dismiss is GRANTED IN PART.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

[1] Defendant Terry Wilson Swimming Pool & Spa does not move to dismiss the First Amended Complaint.

:

Initials of Preparer PMC

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

As noted above, Plaintiff alleges two claims against Twitter: one for direct copyright infringement and a second for "vicarious and/or contributory" infringement. These claims arise out infringing posts made by various users, who used Plaintiff's work and reposted it without Plaintiff's permission. *See* FAC, Ex. 1. The Court considers each in turn.

### A. DIRECT COPYRIGHT INFRINGEMENT

To state a claim for direct copyright infringement, Plaintiff "must show ownership of the allegedly infringed material" and "demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *See A&M Recs. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

Plaintiff "must also establish causation, which is commonly referred to as the 'volitional conduct requirement.'" *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019). To do so, Plaintiff must plead facts showing that Twitter "exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos." *Id.* at 732 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017)). Twitter must have been "*actively involved*" in the infringement, rather than a mere passive participant. *Id.* (emphasis in original). "[A]utomatic copying, storage, and transmission of copyrighted materials, when instigated by others," does not suffice. *Zillow*, 918 F.3d at 732 (quoting *Giganews*, 847 F.3d at 670).

In *Zillow*, the Ninth Circuit held that Zillow, a real estate marketplace website that hosted a listing platform, did not infringe upon copyrights when third parties selected the photos that Zillow displayed. *See id.* at 733. Specifically, because Zillow exercised no control over content "beyond the general operation of its website," its "passive participation in the alleged infringement" was insufficient "to cross the volitional-conduct line." *Id.* at 738.

:

Initials of Preparer PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-8360-SVW | Date | February 28, 2022 |
| Title | *Alexander Stross v. Twitter, Inc. et al.* | | |

Further, Zillow's "behind-the-scenes technical work," which included a process whereby Zillow "produced cached copies of [] images, a process that automatically trims or pads images whose height and width did not match the target resolution, for the purposes of accelerating website speed," also did not amount to volitional conduct. *Id.* at 738. However, to the extent Zillow's own employees "selected and tagged" photographs to display on Zillow's platform, Zillow was liable for copyright infringement. *Id.* at 736.

Here, the complaint fails to specify whether Twitter's "conduct" occurs automatically, akin to Zillow's "behind-the-scenes technical work," *see Zillow*, 913 F.3d at 738, or whether Twitter is actively involved in the alleged infringement. *See generally* FAC. Plaintiff points to referencing two portions of the FAC that purportedly show Twitter's active involvement in determining what content is displayed. However, Plaintiff's allegations are insufficient to "cross the volitional-conduct line." *See Zillow*, 918 F.3d at 734.

First, Plaintiff's alleges that Twitter designed its website to algorithmically select content. In *Zillow*, the Ninth Circuit expressly rejected a similar argument, holding that "Zillow did not engage in volitional conduct" even though it "designed its system to…cause[] the reproduction, display, and adaptation of [the plaintiff's] photographs post-sale on the Listing Platform[.]" *See id.*; *see Zillow*, 918 F.3d at 733.

Second, Plaintiff states that, "[u]pon information and belief, Twitter also directly and affirmatively" decides what content to display "through both human employees and automated processes designed and controlled by human employees[.]" *Id.* ¶ 66. Similarly, Plaintiff asserts that "Twitter decides what content (including photographs) is suggested, recommended, and/or displayed to users in their respective…timelines; and, through Twitter's curation of the "trends," "moments," searches, and advertisements on Twitter's Platform, displays photographs to non-posting users that would otherwise only be seen on the posting user(s)'s profile page(s)." *Id.* ¶ 14.

These allegations are unavailing. Though Plaintiff claims that Twitter "decides" what content to display, Plaintiff pleads no facts indicating whether this is an active decision—which would satisfy the volitional-conduct requirement—or algorithmic one. *Cf. Twombly*, 550 U.S. at 564 ("Although in form a few stray statements speak directly of agreement [to restrain trade], on fair reading these are merely legal conclusions resting on the prior allegations."). This conclusory allegation—which is "just as much in line" with a theory that satisfies the volitional-conduct requirement as one that doesn't, fails to "raise a right to relief above the speculative level." *See id.* at 554–555 (citing see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable

:

Initials of Preparer PMC

right of action").

Plaintiff appears to concede this point, arguing that the FAC satisfies the volitional conduct requirement because Twitter "instigated" the copyright infringement—but authorities Plaintiff cites are inapposite. For example, in *Bell*, the defendant owned a website that itself had posted the copyrighted photograph upon which it had allegedly infringed. *See Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1070, 1081–82 (9th Cir. 2021). When the plaintiff asked the defendant to take the image down, the website's webmaster simply changed the image's filename rather than removing the image. *Id.* at 1070. The defendant's "actions in assuming responsibility for and maintaining the server were clearly the most important causes'" of the copyright infringement. *Id.* at 1081–82 (cleaned up). Here, by contrast, the FAC does not assert that Twitter itself uploaded any of Plaintiff's photographs or actively displayed or republished them. *See generally* FAC.

Likewise, another case apparently brought by Plaintiff is also unavailing. *See Stross v. Realty Austin, LLC*, No. 1:20-CV-01071, 2021 WL 2942399, at *3 (W.D. Tex. July 13, 2021). There, the out-of-circuit district court declined to consider *Zillow* at the motion to dismiss stage—a decision that diverges from the Ninth Circuit's approach. *See id.; see Long v. Dorset*, 854 F. App'x 861, 863–64 (9th Cir. 2021) (affirming dismissal of complaint where no volitional conduct was alleged).

The remaining cases cited by Plaintiff all involve either human actors or infringing content that was alleged to have been published by the defendant. *See* Reply at 5. At no point does Plaintiff allege facts supporting a reasonable inference that Twitter did anything more than "respond[] automatically to users' input [.]" *See Zillow*, 918 F.3d at 738 (cleaned up); *see also Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1112–13 (N.D. Cal. 2021) ("Although Redbubble arguably modifies the infringing images it receives from artists by applying them to stock photos of physical goods such as apparel, those acts do not demonstrate the type of control that will support direct liability. Any modification occurs automatically with no intervening act by Redbubble employees.").

Ultimately, Plaintiff's flawed allegations bespeak a more fundamental problem in Plaintiff's FAC: the lack of any nexus between Twitter's conduct and the alleged infringement. *See Zillow*, 918 F.3d at 732 (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)) ("There must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner."). Not a single allegation in Plaintiff's FAC suggests that Twitter actively (or even passively) copied, shared, or reposted *Plaintiff's* posts.

:

Initials of Preparer PMC

For example, Plaintiff's allegation that "Twitter prepares and creates other 'moments' manually by its Curation team" is insufficient. *Id.* ¶ 14. Though Plaintiff explains that "moments" are "stories about what's happening around the world" that Twitter curates, customizes, and categorizes, *id.* ¶ 25, and that Twitter's curation team "finds and highlights 'great Tweets," including photographs[,]" *id.* ¶ 26, Plaintiff does not allege that any of his photographs were ever selected by Twitter's team for placement in a moment.

Instead, Plaintiff would have the Court infer that Twitter displayed his photographs "in the same way" that it displays other photographs on its platform. *See* Opp'n at 11. However, Plaintiff fails plead any facts giving rise to a reasonable inference that his photographs were ever copied, re-posted, or selected for inclusion by Twitter in Twitter's timeline, trends, moments, search, or advertising features. *See* FAC ¶¶ 12–13, 52, 61–62, 65–66. Though Plaintiff attaches a number of screenshots of Infringing Uses, *see* FAC, Ex. 1, ECF No. 22-1, these images only show users who themselves posted Plaintiff's images to their personal profiles. *See id.* Without any allegations that Twitter actually displayed, published, or copies Plaintiff's photographs, Plaintiff fails to state a claim for copyright infringement. *See Zillow*, 918 F.3d at 732.

For these reasons, the Court finds that the FAC is insufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

### B. "VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT" INFRINGEMENT

Plaintiff's second claim for relief against Twitter is for "Vicarious and/or Contributory Copyright Infringement." FAC ¶¶ 70–80. Vicarious and contributory copyright infringement are separate doctrines with distinct elements. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171, 1173 (9th Cir. 2007). Plaintiff's claim for vicarious infringement is premised entirely on conclusory allegations and fails to state a claim.[2] Thus, the Court turns to Plaintiff's claim for contributory infringement.

---

[2] Specifically, Plaintiff must "establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Amazon.com*, 508 F.3d at 1173. As to control, Plaintiff misstates the applicable legal standard: "The first element requires "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *See Zillow*, 918 F.3d at 746. Plaintiff pleads no facts to suggest that Twitter had the practical ability to locate and remove his photos without any knowledge of them or their location. *See id.* ("[F]erreting out claimed infringement [] was beyond hunting for a needle in a haystack"). As to the direct financial benefit, the FAC similarly does not establish any sort of plausible link between the photographs at issue and any financial benefit to Twitter. *See e.g., Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006) (finding "vague and conclusory" an allegation of a link between Google's advertising revenue, the number of Google users, and Google's "participation in the alleged infringement.").

:

Initials of Preparer PMC

To establish contributory infringement, a plaintiff must show that the defendant "(1) knew of the direct infringement; and (2) they either induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Plaintiff advances a material contribution theory.

"[A] computer system operator is liable under a material contribution theory of infringement if it has *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *See Zillow*, 918 F.3d at 745 (citing *Giganews*, 847 F.3d at 671) (internal quotation marks omitted); *see also Amazon*, 508 F.3d at 1172.

Here, Plaintiff asserts that Twitter had actual knowledge of the copyrighted photographs based on several notices Plaintiff sent to Twitter. *See* FAC ¶¶ 53–60. Specifically, Plaintiff alleges that he sent takedown notices to Twitter on March 27, 2021, April 3, 2021, and September 8, 2021, and includes copies of subsequence email correspondence related to each takedown notice. *Id.* ¶¶ 53–55; *see* Opp'n at 15–16.[3]

The FAC alleges that these notices were compliant with the Digital Millennium Copyright Act ("DMCA"), a point that Twitter does not dispute. *See* FAC ¶¶ 53–55. Pursuant to 17 U.S.C. § 512(c)(3), a DMCA-compliant notice "provides [] a *claim* of infringement, [even if it] is not necessarily sufficient by itself to establish actual or "red flag" knowledge." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1021 (9th Cir. 2013); *see also Perfect 10, Inc. v. Yandex*

[3] Twitter includes with its motion copies of emails that Plaintiff sent to Twitter and Twitter's subsequent responses. "[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Here, Plaintiff does not contest the authenticity of these documents. Indeed, Plaintiff and his counsel authenticate the documents by including them as exhibits to their declarations and indicating that they are true and correct copies of the communications. *See* Declaration of Alexander Stross ("Stross Decl.") ¶¶ 2–3, Ex. 1, 2, ECF No. 27-1, 27-2, 27-3; Declaration of Stephen M. Doniger ("Doninger Decl.") ¶ 2, Ex. 1, ECF No. 27-4, 27-5. Further, Plaintiff's complaint necessary relies on these documents in an attempt to establish Twitter's actual knowledge of the infringing material. Though Rule 12(b)(6) motions are ordinarily converted into summary judgment motions when a defendant attaches additional documents to its motion, this is generally done "so that the party against whom the motion to dismiss is made may respond[…]Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Parrino*, 146 F.3d at 706, n. 4 (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

:

Initials of Preparer PMC

*N.V.*, No. C 12-01521 WHA, 2013 WL 1899851, at *6 (N.D. Cal. May 7, 2013) ("[W]hether a DMCA compliant notice confers actual knowledge of alleged infringement depends on the evidentiary record.").

Here, Plaintiff's takedown notices were emailed to Twitter as PDF attachments. *See, e.g.*, Stross Decl. ¶ 2, Ex. 1. In response to each of Plaintiff's notices, Twitter sent an email indicating that Plaintiff's attachments had been automatically stripped from the email, due to security concerns. *Id.* Each time, Plaintiff received a second email stating that Plaintiff had not provided sufficient information for Twitter to locate the infringing material and requesting that Plaintiff provide a description of the work by responding to the email. *Id.* at 9. The first time, Plaintiff responded by attaching the same PDF he had previously sent. The second and third time, Plaintiff did not respond. *See* Stross Decl. ¶ 3, Ex. 2; Doniger Decl. ¶ 2, Ex. 1.

As to the third notice, which was a lengthy cease-and-desist letter sent by Stross' counsel, Twitter's September 8, 2021 response said, "Thanks for your report. We're going to escalate this to another team for review." *See* Doniger Decl. ¶ 2, Ex. 1 at 55. A Twitter employee then sent another email to Stross' counsel on October 8, 2021, noting that Twitter's e-mail system automatically strips all unsolicited incoming email attachments. *See* Declaration of Vanessa Szajnberg ¶ 5, Ex. 4, ECF No. 24-6. It stated, "The attachment you previously sent has not been received…If you must submit an attachment, please click on the link below to upload it directly: [link]." *See id.* at 2. Plaintiff's counsel did not submit the attachment, and, instead, filed the instant suit on October 21, 2021.

Though the Court need not accept as true allegations that are contradicted by documents referred to in the complaint, *see Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), Twitter's motion prematurely asks the Court to decide, as a factual matter at the Rule 12(b)(6) stage, whether Twitter had actual knowledge of the Infringing Uses. *See* FAC at ¶ 73. Specifically, though Twitter's emails stated that Twitter had not received the PDF attachments, there is no evidence from which the Court can evaluate the veracity of this statement. Despite the language about deletion, it is possible that Twitter's security software preserved a copy of the PDF for later access, or that an employee could review attachments prior to their deletion.

Though Twitter sent a number of emails indicating that it had not received Plaintiff's information, the Court must draw "all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust*, 768 F.3d at 945. At the very least, Twitter's other responses, including "Thanks for your report. We're going to escalate this to another team for review[,]" *see* Doniger Decl. ¶ 2, Ex. 1 at 55, raise a factual question about the possibility of deletion that the Court cannot decide at this stage.

:

Initials of Preparer PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-8360-SVW | Date | February 28, 2022 |
|---|---|---|---|
| Title | *Alexander Stross v. Twitter, Inc. et al.* | | |

Moreover, because a DMCA-compliant notice "provides [] a *claim* of infringement" pursuant to 17 U.S.C. § 512(c)(3), questions may arise related to the sufficiency of Plaintiff's email under the DMCA.[4] *See UMG Recordings, Inc.*, 718 F.3d at 1021. Ultimately, the Court cannot determine what Twitter knew with little more than an email stating that the PDF attachment had been deleted. Thus, taking Plaintiff's factual allegations as true, Plaintiff's complaint plausibly alleges actual knowledge.

As to the second prong of contributory infringement, Plaintiff must allege that Twitter could have taken "simple measures" to prevent further infringement of his copyrights. Logically, this prong coincides with actual knowledge—since Plaintiff had submitted notices with various links to the infringing materials, Twitter's ability to take "simple measures" to remove the content is predicated on its knowledge of the infringing content. *See, e.g., Giganews*, 847 F.3d at 671 (plaintiff's submission of generalized takedown demands for its photographs did not provide defendant "simple measures" for removing the images because plaintiff's notices did not include machine-readable information for the photographs).

Here, because Plaintiff plausibly alleges that he had given Twitter notice via DMCA-compliant emails, Twitter's argument is unavailing. *See id.* Had Twitter's email system not deleted the PDF attachments, Plaintiff's notices would have likely been sufficient to show where the infringing uses were located. This too is uncertain from the limited evidence and briefing at this early stage of the case. As a result, Defendant's motion to dismiss the contributory infringement claim is denied.

## IV. CONCLUSION

For the above reasons, Twitter's motion to dismiss is GRANTED IN PART. Plaintiff is granted leave to amend. If Plaintiff wishes to file an amended complaint, he is ORDERED to do so within fourteen days.

**IT IS SO ORDERED.**

[4] If Twitter's right to claim the DMCA safe harbor as an affirmative defense was before the Court at this time, *see Long*, 854 F. App'x at 865, the Court would likely need to evaluate to whether Twitter's attachment-stripping software comports with the DMCA's requirements. Plaintiff may argue that Twitter is not entitled to the safe harbor at later stage, but the only question before the Court now is Twitter's actual knowledge based on potentially receiving of Plaintiff's notices. *See Giganews*, 2014 WL 8628031, at *7.

:

Initials of Preparer PMC